**BERKOWITZ, LICHTSTEIN, KURITSKY,**
**GIASULLO & GROSS, LLC**
John C. Messina, Esq.
75 Livingston Avenue
Roseland, New Jersey 07068
P: 973-325-7800 | F: 973-325-7930
jmessina@blkgg.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SUZY ARKU-NYADIA,<br><br>                    Plaintiff<br><br>          v.<br><br>LSFW LLC f/k/a LEGAL SEA FOODS, LLC;<br>LEGAL SEA FOODS RESTAURANT<br>GROUP, INC.; ABC COMPANIES 1-10,<br><br>          Defendants. | Case No. 2:18-cv-01089 |

---

### PLAINTIFF'S BRIEF IN SUPPORT OF
### MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANT
### LSFW LLC f/k/a LEGAL SEA FOODS, LLC

---

Berkowitz Lichtstein Kuritsky
Giasullo & Gross, LLC.
Attorneys for the Plaintiff
Suzy Arku-Nyadia
75 Livingston Ave
Roseland, New Jersey 07068
T: 973-328-7800  | F: 973-325-7930
jmessina@blkgg.com

On the Brief:  John Messina, Esq.
                    Evan Silagi, Esq.

{00091722}

# TABLE OF CONTENTS

PROCEDURAL HISTORY ................................................................................................ 2

FACTUAL BACKGROUND .......................................................................................... 4

LEGAL ARGUMENT .................................................................................................... 4

I.    PLAINTIFF IS ENTITLED TO ENTRY OF A DEFAULT JUDGMENT AGAINST DEFENDANT LSF PURSUANT TO FED. R. CIV. P. 55(B)(2). ...................................... 4

*(a)    This Court Has Personal and Subject Matter Jurisdiction over the Claims.* ............................ 6

*(b)  LSF has Been Served with Process.* ..................................................................... 7

*(c)  The Court Has Already Determined that Plaintiff's Complaint States Viable Causes of Action for Disparate Treatment, Hostile Work Environment and Retaliation.* ............................................ 7

*(d)    Plaintiff has Adequately Proved Compensatory Damages, Emotional Distress Damages and Punitive Damages.* ...................................................................................................... 8

*(i) Plaintiff Should be Awarded Lost Wages in the Amount of $46,808.* .............................. 8

*(ii) Plaintiff Has Proved Substantial Emotional Distress Damages.* ................................ 11

*(iii) A Substantial Award of Punitive Damages is Appropriate.* ....................................... 13

*(e)    No Countervailing Considerations Weigh Against Entry of a Default Judgment.* ............... 16

II.    PLAINTIFF IS ENTITLED TO HER REASONABLE ATTORNEYS' FEES AND COSTS. ........................................................................................................................ 16

*(a) Plaintiff is a Prevailing Party Entitled to Attorneys' Fees.* ........................................ 17

*(b) Plaintiff's Claim for Attorneys' Fees is Appropriate and Reasonable.* ......................... 18

*i. Plaintiff's Hours are Reasonable.* ......................................................................... 19

*ii.  Plaintiff is Entitled to the Current Market Rate.* ................................................... 22

*(c) Plaintiff is Entitled to a Fee Enhancement.* .......................................................... 24

*(d) Plaintiff is Entitled to Costs.* ............................................................................ 26

III. PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST. .............................. 27

CONCLUSION ............................................................................................................ 28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Abrams v. Lightolier, Inc., 50 F.3d 1204 (3d Cir. 1995) ........................................................ 19, 27

Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265 (3d Cir. 2001)..................... 7

Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975) ................................................................. 9

Andujar v. Gen. Nutrition Corp., 2018 WL 1087494 (D.N.J. Feb. 28, 2018), aff'd, 767 Fed. Appx. 238 (3d Cir. 2019 ..................................................................................................................... 11, 13

Arc of New Jersey, Inc. v. Voorhees, 986 F. Supp. 261 (D.N.J. 1997) ...................................... 21

Bianchi v. City of Philadelphia, 80 Fed. Appx. 232 (3d Cir. 2003) ............................................ 9

Blakey v. Cont'l Airlines, Inc., 2 F. Supp. 2d 598 (D.N.J. 1998) ......................................... 17, 25

Blowers v. Lawyers Cooperative Pub. Co., Inc., 526 F.Supp. 1324 (W.D. N.Y. 1981)............. 20

BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996) ...................................................... 15

Boles v. Wal-Mart Stores, Inc., 2015 WL 4653233 (D.N.J. Aug. 5, 2015), aff'd, 650 Fed. Appx. 125 (3d Cir. 2016) ............................................................................................................................ 13

Boston and Maine Corp. v. Moore, 776 F.2d 2 (1st Cir. 1985) ................................................. 26

Bung's Bar & Grille, Inc. v. Florence Township, 206 N.J. Super. 432 (L. Div. 1985)........ 25, 27

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) ............................................................... 6

Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412 (1978)............. 17

City of Riverside v. Rivera, 477 U.S. 561 (1986)........................................................... 18, 19, 26

Coleman v. Kaye, 87 F.3d 1491 (3rd cir. 1996)......................................................................... 24

Comdyne I, Inc. v. Corbin, 908 F.2d 1142 (3d Cir. 1990).......................................................... 14

DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 n 6 (3d Cir. 2005).................................................... 5

Donlin v. Philips Lighting North America Corp., 581 F.3d 73, 78 n.1 (3d Cir. 2009).................... 9

Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171 (D.N.J. 2008) ................ 5, 16

Durant v. Husband, 28 F.3d 12 (3d Cir. 1994) ............................................................................ 8

Durham Life Ins. Co. v. Evans, 166 F.3d 139 (3d Cir.1999)....................................................... 9

E. Elec. Corp. of N.J. v. Shoemaker Constr. Co., 657 F.Supp. 2d 545 (E.D.Pa.2009)........... 5, 8

Emcasco Ins. Co. v. Sambrick, 834 F.2d 71 (3d Cir. 1987) ....................................................... 16

Fado v. Kimber Mfg., Inc., 2016 WL 3912852 (D.N.J. July 18, 2016) ........................................ 7

Fagas v. Scott, 251 N.J. Super. 169 (Law Div. 1991)......................................................... 23, 27

Gallo v. Salesian Soc., Inc., 290 N.J. Super. 616 (App. Div. 1996) .......................................... 27

Gunby v. Pennsylvania Elec. Co., 840 F.2d 1108 (3d Cir. 1988)......................................... 9, 12

Hall v. Ochs, 817 F.2d 920 (1st Cir. 1987)................................................................................ 21

Hightower v. Roman, Inc., 190 F. Supp. 2d 740 (D.N.J. 2002)................................................. 13

Hurley v. Atlantic City  Police Department, 933 F. Supp. 396 (D.N.J. 1996)............................ 25

In re Caruso, 18 N.J. 26 (1951)................................................................................................. 27

Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694 (1982) ................... 6

Jean v. Nelson, 863 F.2d 759, 772 (11th Cir. 1988), aff'd on other grounds, 496 U.S. 154 (1990)........... 21

Joe Hand Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261 (E.D. Pa. 2014).............................. 5

Johnson v. Ry. Exp. Agency, Inc., 421 U.S. 454 (1975) ........................................................... 13

Klawitter v. City of Trenton, 395 N.J. Super. 302 (App. Div. 2007).......................................... 11

Kowaleski v. Allstate Ins. Co., 238 N.J. Super. 210, 218 n.4 (App. Div. 1990) ........................ 27

Lehmann v. Toys R Us, Inc., 132 N.J. 587 (1993) .............................................................. 9, 13

Linton v. L'Oreal USA, 2009 WL 838766 (D.N.J. Mar. 27, 2009) ............................................................ 11

Lockley v. Turner, 344 N.J. Super. 1 (App. Div. 2001),
    aff'd as modified on other grounds, 177 N.J. 413 (2003) ......................................................... 23, 25, 26

Loeffler v. Frank, 486 U.S. 549 (1988) ........................................................................................................ 9

Maldonado v. Houstoun, 256 F.3d 181 (3d Cir. 2001) ............................................................................. 23

Mann v. Prince Telecom, LLC, 2013 WL 3884189 (D.N.J. July 26, 2013) ............................................... 7

McKenna v. Pacific Rail Serv., 817 F. Supp. 498 (D.N.J. 1993), vacated and remanded on other grounds,
    32 F.3d 820 (3d Cir. 1994), appeal after remand, 61 F.3d 895 (3d Cir. 1995) ...................................... 27

Milazzo v. Exxon Corp., 243 N.J. Super. 573 (Law Div. 1990) ............................................................... 27

Mitroff v. Xomox Corp., 38 EPD ¶35, 654 (S.D. Ohio 1985),
    rev'd on other grounds, 797 F.2d 271 (6th Cir. 1986) ............................................................................ 20

Moroccanoil, Inc. v. JMG Freight Grp. LLC, 2015 WL 6673839 (D.N.J. Oct. 30, 2015) .......................... 8

Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400 (1968) ............................................................... 17

Prioli v. Cty. of Ocean, 2021 WL 4473159 (D.N.J. Sept. 30, 2021) ............................................................ 7

Rendine v. Pantzer, 141 N.J. 292 (1995) ......................................... 17, 18, 20, 21, 22, 23, 24, 25, 26

Student Public Interest Research Group of New Jersey, Inc. v. AT&T Bell Laboratories,
    842 F.2d 1436 (3d Cir. 1988) ........................................................................................................ 19, 23

Swinton v. Potomac Corp., 270 F.3d 794 (9th Cir. 2001) ......................................................................... 16

Szczepanski v. Newcomb Medical Center, 141 N.J. 346 (1995) ........................................................ 19, 21

Travelodge Hotels, Inc. v. Wilcox Hotel, LLC, 2018 WL 1919955 (D.N.J. Apr. 23, 2018) ....................... 5

Unimaven, Inc. v. Texas TR, LLC, 2020 WL 5406162 (D.N.J. Sept. 8, 2020) ............................................ 5

Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031 (3d Cir. 1996) .................... 20

**Statutes**

29 U.S.C. §1331 ........................................................................................................................................... 6

29 U.S.C. §1332(a)(1) .................................................................................................................................. 6

42 U.S.C. §1988 ......................................................................................................................................... 16

42 U.S.C. §2000e-5(k) ............................................................................................................................... 16

N.J.S.A. 10:5-27.1 ...................................................................................................................................... 16

**Rules**

Fed. R. Civ. P. 55(a) .................................................................................................................................... 5

Fed. R. Civ. P. 55(b) .................................................................................................................................. 14

Fed. R. Civ. P. 55(b)(2) ........................................................................................................................... 4, 5

R. 4:42-11 ................................................................................................................................................... 27

## PRELIMINARY STATEMENT

This is an application for entry of a default judgment proceeding under Fed. R. Civ. P. 55(b)(2) against defaulting defendant LSFW LLC f/k/a Legal Sea Foods LLC ("LSF"). Plaintiff Suzy Arku-Nyadia has vigorously litigated this race discrimination and retaliation lawsuit against LSF since 2017, including completing discovery and overcoming summary judgment. During that time, LSF was a zealous and obstreperous adversary, fighting any effort at resolution or reconciliation at every step. In December 2020, after three years of litigation, LSF unexpectedly sold substantially all of its assets to a successor entity, defendant Legal Sea Foods Restaurant Group, LLC ("LSFRG"), rendering itself insolvent, and announced that it no longer intended to defend plaintiff's claims. A default was entered thereafter and Hon. Leda Dunn Wettre, U.S.M.J. instructed plaintiff to move for a default judgment fixing her damages against LSF on or before December 3, 2021. This motion follows.

Based upon the detailed factual record and affidavits submitted herewith, plaintiff now seeks a final judgment against LSF pursuant to the New Jersey Law Against Discrimination, Section 1981 of the Civil Rights Act of 1866 and Title VII of the Civil Rights Act of 1964 in the form submitted, fixing the following amounts and categories of damages:

- Economic Damages in the amount of $46,808;

- Emotional Distress Damages in an appropriate amount between of $75,000 to $200,000;

- Punitive Damages in an appropriate amount to be determined by the Court;

- Attorneys' Fees in the amount of $367,611;

- Litigation Expenses and Costs in the amount of $13,868;

- Prejudgment Interest in an appropriate amount.

## PROCEDURAL HISTORY

Plaintiff initiated this race-discrimination lawsuit on December 22, 2017 in the Superior Court of New Jersey, Law Division, Essex County, and Defendant removed the case to the United States District Court for the District of New Jersey on January 26, 2018.[1]  Plaintiff filed a First Amended Complaint on June 4, 2021 ("FAC").[2]  The FAC alleges the following claims against LSF, disparate treatment (Count One), retaliation (Count Two), and a hostile work environment (Count Three), based upon plaintiff's race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New Jersey Law Against Discrimination ("NJLAD").[3]  Plaintiff has filed a pending motion for leave to file a Second Amended Complaint ("SAC"), which states the same factual claims against LSF, but adds identical claims arising under §1981 of the Civil Rights Act of 1866, 42 U.S.C. §1981 ("§1981") to Counts One, Two and Three.[4]

From 2017 until 2021, LSF aggressively defended this lawsuit.[5]  As discussed at Point II infra in the context of plaintiff's application for attorneys' fees, LSF's litigation tactics unnecessarily obstructed the pre-trial process, including: (1) refusing to engage in settlement discussions in good faith; (2) failing to disclose or produce numerous similar employee complaints of discrimination and retaliation; (3) attempting to "time out" the discovery period without producing relevant information; (4) failing to produce witnesses and/or withdrawing witnesses at the last moment after out-of-state depositions were confirmed; (5) providing false testimony under oath; (6) withholding last known addresses for witnesses; and (7) engaging in blatant witness coaching during breaks in depositions, among other similar actions.[6]

---

[1] ECF 1.
[2] ECF 103.
[3] The Amended Complaint also asserts claims against defendants PPX Hospitality Brands, Inc. and John Does ("PPX"), which are the alleged successor entities to LSF.  This motion does not concern those defendants.
[4] ECF 134-2, Proposed SAC and ECF 133 Legal Memorandum Regarding Proposed SAC.
[5] See ECF 83, decision of Hon. Susan D. Wigenton, U.S.D.J., denying summary judgment.
[6] See generally ECF 45, 58, 61.

On June 6, 2020, LSF moved for summary judgment dismissing all counts.[7]  On June 22, 2020, plaintiff filed her opposition thereto.  Plaintiff incorporates her Supplemental Statement of Material Facts[8] and Brief in Opposition to Summary Judgment[9] into this motion as her presentation of the facts and law underlying her substantive right to a default judgment, as further expounded below.  On October 16, 2020, Hon. Susan B. Wigenton, U.S.D.J., entered a decision denying LSF's motion for summary judgment as to plaintiff's race-discrimination, retaliation and hostile work environment claims and preserving those claims for trial.[10]

On January 13, 2021, shortly following this Court's denial of its motion for summary judgment, LSF informed the Court that it had sold substantially all of its assets, that LSF had ceased business operations, and that "there are no funds available to defend litigation matters against the company…"[11]  On February 10, 2021, LSF certified to the Court that it had "made the decision not to defend … the present case."[12]  On March 8, 2021, the Court entered an Order permitting counsel for LSF to withdraw, finding that counsel "no longer have a client who is participating in the instant litigation due to the cessation of defendant's business activities."[13]

On February 23, 2021, Hon. Leda Dunn Wettre, U.S.M.J. submitted a Report and Recommendation (R&R), which "respectfully recommends that the Court strike defendant's Answer and enter default against it."[14]  On March 11, 2021, the Court entered an Order adopting the R&R entirely, striking the Answer of LSF and entering default against LSF.[15]  On November

---

[7] ECF 68.
[8] ECF 73.
[9] ECF 72
[10] ECF 83.
[11] ECF 87.
[12] ECF 92-2.
[13] ECF 96.
[14] ECF 94.
[15] ECF 97.

1, 2021, Judge Wettre entered an Amended Scheduling Order directing plaintiff to move for default judgment against defendant LSF on or before December 3, 2021.[16]

The present application for entry of a default judgment against LSF pursuant to <u>Fed. R. Civ. P.</u> 55(b)(2), follows.

## FACTUAL BACKGROUND

In support of her application for entry of default judgment, plaintiff relies upon the FAC[17] and proposed SAC, which set forth her allegations.  Plaintiff incorporates her Supplemental Statement of Material Facts[18] and Brief in Opposition to Summary Judgment[19] which set forth the facts and legal bases upon which her claim for default judgment rests.  In addition, plaintiff relies upon the following certified documents submitted herewith:

- Declaration of Suzy Arku-Nyadia
- Declaration of John C. Messina, Esq.
- Declaration of Evan Silagi, Esq.
- Declaration of Fred Sharooz-Scampato, Esq.
- Declaration of James Burden, Esq.

## LEGAL ARGUMENT

**I.   PLAINTIFF IS ENTITLED TO ENTRY OF A DEFAULT JUDGMENT AGAINST DEFENDANT LSF PURSUANT TO FED. R. CIV. P. 55(B)(2).**

Plaintiff requests entry of a default judgment against defendant LSF pursuant to <u>Fed. R. Civ. P.</u> 55(b)(2), which provides that "the party must apply to the court for a default judgment" in all cases not involving a sum certain or a sum that can be made certain by computation."

---

[16] ECF 126.
[17] ECF 103.
[18] ECF 73.
[19] ECF 72

Default was entered against LSF on March 11, 2021.[20]  See Fed. R. Civ. P. 55(a) (default may be entered against a party who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise.").  Once a party has defaulted, the consequence is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 n 6 (3d Cir. 2005).  After default is entered, the moving party "may seek the Court's entry of default judgment under …Rule 55(b)(2)." Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008). "If the court can determine the amount of damages to be awarded based on affidavits or other evidentiary materials, the Court is under no requirement to conduct an evidentiary hearing with testimony." Joe Hand Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014) (quoting E. Elec. Corp. of N.J. v. Shoemaker Constr. Co., 657 F.Supp. 2d 545, 552 (E.D.Pa.2009)).

When determining whether to enter a default judgment, the Court must first: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the [c]omplaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." Unimaven, Inc. v. Texas TR, LLC, 2020 WL 5406162, at *8 (D.N.J. Sept. 8, 2020) (citing Travelodge Hotels, Inc. v. Wilcox Hotel, LLC, 2018 WL 1919955, at *3 (D.N.J. Apr. 23, 2018)).

Applying the foregoing, default judgment should be entered in favor of plaintiff and against LSF on Counts One, Two and Three pursuant to Fed. R. Civ. P. 55(b)(2).

---

[20] ECF 97.

(a)     **This Court Has Personal and Subject Matter Jurisdiction over the Claims.**

This Court has both subject matter jurisdiction and personal jurisdiction over defaulting defendant LSF.  Plaintiff's claims for disparate treatment on the basis of race, hostile work environment and retaliation, arise under §1981 and Title VII and, thus, present federal questions subject to the Court's original subject matter jurisdiction pursuant to 29 U.S.C. §1331.[21]  With respect to plaintiff's parallel state law claims arising under the New Jersey Law Against Discrimination ("NJLAD"), LSF removed this case to federal court and affirmatively represented that the United States District Court has "original jurisdiction over Plaintiff's claims by virtue of diversity of citizenship and satisfaction of the amount in controversy requirement of 29 U.S.C. §1332(a)(1)."  (ECF 1 at ⁋12).  Accordingly, this Court has subject matter jurisdiction over all of plaintiff's claims.

This Court has personal jurisdiction over LSF because LSF maintained minimum contacts with the forum state related to the substance of the lawsuit such that fair play and substantial justice support the exercise of such jurisdiction.  See generally Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).  In this case, plaintiff's discrimination claims arise out her employment at restaurants owned and operated by LSF within the State of New Jersey.  (FAC ⁋6).  Further, LSF has consented to personal jurisdiction in this Court thereby waiving any objection.  See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 705 (1982) (noting that personal jurisdiction may be consented to).  Accordingly, this Court has personal jurisdiction over defendant LSF, and default judgment should be entered against defendant LSF as to Counts One, Two and Three of the FAC.

---

[21] See ECF 134-1 and ECF 133.

*(b)  LSF has Been Served with Process.*

Default judgment should be entered because defendant LSF was properly served with process.  In December 2017, LSF acknowledged that it was "served with the Summons and Complaint on December 29, 2017." (ECF 1, ⁋2).  LSF participated in this litigation from December 2017 until its default in January 2021 at which time it sold its assets and withdrew from its defense.  Accordingly, default judgment should be entered against defendant LSF as to Counts One, Two and Three.

*(c)  The Court Has Already Determined that Plaintiff's Complaint States Viable Causes of Action for Disparate Treatment, Hostile Work Environment and Retaliation.*

The Court should enter a default judgment against LSF because plaintiff has demonstrated viable causes of action against LSF for disparate treatment on the basis of race (Count One), hostile work environment (Count Two) and retaliation (Count Three).  The Court has already considered plaintiff's evidence and legal arguments supporting her NJLAD claims[22] and determined that they are legally viable and supported by sufficient evidence to warrant a trial.[23]  The factual and legal elements of plaintiff's §1981 and Title VII claims are identical to her NJLAD claims.[24]  In its decision denying of LSF's summary judgment motion, the Court made the following rulings which are incorporated herein:

- "In sum, Plaintiff has provided evidence that would allow a factfinder to reasonably infer that Defendant's proffered non-discriminatory reasons for terminating Plaintiff were

---

[22] ECF 72-74.
[23] ECF 83, ECF 134-1 and ECF 133.
[24] "In the employment discrimination context, § 1981 and NJLAD claims are analyzed" under the same framework" and have the same *prima facie* elements."  Fado v. Kimber Mfg., Inc., 2016 WL 3912852, at *9 (D.N.J. July 18, 2016) (citing Mann v. Prince Telecom, LLC, 2013 WL 3884189, at *1 (D.N.J. July 26, 2013)).  "If Plaintiffs' "Title VII claims survive summary judgment, their NJLAD claims do as well."  Prioli v. Cty. of Ocean, 2021 WL 4473159, at *18 (D.N.J. Sept. 30, 2021) (quoting Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 281 (3d Cir. 2001)).

pretextual.  As such, this Court finds that Plaintiff has raised material issues of fact that preclude summary judgment as to Count One."  (ECF 83, at p. 12).

- "A reasonable jury could resolve these fact issues in Plaintiff's favor and conclude that she was fired in retaliation for her protected activity.  Therefore, Defendant's motion for summary judgment is denied as to Count Two."  (ECF 83, at p. 14).

- "A trier of fact could reasonably find that Plaintiff suffered persistent racial discrimination in her workplace, and that at a minimum it interrupted her ability to perform her job duties. As such, Defendant's motion for summary judgment is denied as to Count Three (ECF 83, at p. 16).

Accordingly, default judgment should be entered against defendant LSF as to Counts One, Two and Three of the FAC.

### (d) Plaintiff has Adequately Proved Compensatory Damages, Emotional Distress Damages and Punitive Damages.

Plaintiff has proved entitlement to economic damages, emotional distress damages and punitive damages.  "Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages."  Moroccanoil, Inc. v. JMG Freight Grp. LLC, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015).   In considering the amount of damages or the truth of an averment of evidence, the Court may make its determination by conducting a hearing or by receiving detailed affidavits from the claimant. E. Elec. Corp. of New Jersey v. Shoemaker Const. Co., 652 F. Supp. 2d. 599, 605 (E.D. Pa. 2009) (citing Durant v. Husband, 28 F.3d 12, 15 (3d Cir. 1994)).

### (i) Plaintiff Should be Awarded Lost Wages in the Amount of $46,808.

The NJLAD, §1981 and Title VII provide for lost wages as a remedy for intentional discrimination, including back pay and front pay. Gunby v. Pennsylvania Elec. Co., 840 F.2d

1108, 1119 (3d Cir. 1988) ("A successful § 1981/Title VII plaintiff is entitled to back pay.") and Lehmann v. Toys R Us, Inc., 132 N.J. 587, 617 (1993) (NJLAD damages "may include …providing back pay and/or front pay").  The lost wage award "is a manifestation of Congress' intent to make persons whole for injuries suffered through past discrimination." Loeffler v. Frank, 486 U.S. 549, 558 (1988). A presumption in favor of a back pay award arises once liability has been found.  Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975).  Back pay and front pay are considered equitable remedies and are awarded in the Court's discretion and without a jury trial.   See Donlin v. Philips Lighting North America Corp., 581 F.3d 73, 78 n.1 (3d Cir. 2009) (explaining that "back pay and front pay are equitable remedies to be determined by the court").

The appropriate standard for measuring a back pay award under Title VII is "to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained." Gunby, 840 F.2d at 1119-20.   "The court may estimate what a claimant's earnings would have been without discrimination, and uncertainties are resolved against a discriminating employer." Durham Life Ins. Co. v. Evans, 166 F.3d 139, 156 (3d Cir.1999).  See also Bianchi v. City of Philadelphia, 80 Fed. Appx. 232, 238 (3d Cir. 2003) ("such an award does not have to be determined with absolute precision.").

Applying those standards, plaintiff has proved entitled to a lost wage claim in the amount of $46,808.  The factual bases of this claim is set forth in full in the Declaration of Suzy Arku-Nyadia submitted herewith at ¶¶13-27 and Exhibits A-D.  It is summarized below:

As a waitress, plaintiff's earnings were highly variable depending on hours worked, shift assignments and tips received.  Plaintiff's actual gross earnings at LSF in the years leading up to

her termination were $33,796 (2015), $29,861 (2016) and $15,764 (2017).[25]  Plaintiff's income was reduced during that period by LSF's wrongful conduct intended to sabotage her ability to earn income, including removing plaintiff from shifts, removing plaintiff from her more lucrative position as "checker," sending plaintiff home from shifts, removing plaintiff from favorable tables and forcing plaintiff to share larger tables which other servers were not required to share.

Plaintiff has certified that it is her best approximation that she suffered a 20% diminution in income while employed by LSF as result of LSF's efforts to reduce her income, although the actual amount of diminution may have been greater.  Applying a 20% adjustment to plaintiff's actual wages[26], plaintiff's gross annual income while employed by LSF, absent discrimination, would have been:  $42,245 (2015), $37,326 (2016) and $47,291(2017).[27]  It is appropriate to use plaintiff's adjusted gross wages for purposes of damages calculations or else plaintiff would be penalized for LSF's wrongful conduct and LSF would benefit therefrom.

The difference between plaintiff's actual wages and adjusted wages over the last three years of her employment is $23,798, which plaintiff is entitled to recover as part of her lost wages award.  The diminution of wages over those individual years is as follows: $8,449 (2015), $7,465 (2016) and $3,942 (2017).  Accordingly, the Court should an award of back pay in the amount of **$23,798**, which reflects plaintiff's lost wages during her employment by LSF.

Plaintiff also suffered lost wages following her termination by LSF.  For purposes of determining plaintiff's lost wages following her termination, it is appropriate to use her adjusted wage rate for 2017, which is $3,941[28] per month or $47,291 per year.  Plaintiff was out of work for approximately one month (June 1, 2017 to June 26, 2017) following her termination.

---

[25] Income through June 1, 2017.
[26] Formula:  potential income * .8 = actual income
[27] Annualized based upon $19,706, from Jan. 1 to Jun. 1.
[28] Formula:  $19,706 / 5 months = $3,941.

Plaintiff suffered lost wages in the amount of **$3,941** during the one-month period of her unemployment.

On or about June 26, 2017, plaintiff began replacement employment as waitress for Capital Grille.  While employed by Capital Grille, plaintiff earned less than she would have if she had remained employed by LSF and had not been subject to actions intended to diminish her income.  During 2017, 2018 and 2019, plaintiff earned **$19,069** less than she would have had she remained employed by LSF based upon her adjusted 2017 wage rate, discussed above.  Plaintiff did not work in 2020 due to COVID related restaurant closures and medical reasons.  Accordingly, plaintiff is not seeking lost wages after 2019.

Based upon the foregoing, the Court should enter a lost wage claim in the amount of **$46,808** to compensate plaintiff for her diminished earnings while employed by LSF and loss of income following her termination.

*(ii) Plaintiff Has Proved Substantial Emotional Distress Damages.*

Plaintiff is entitled to a substantial award of emotional distress damages as a result of the harassment, discrimination and retaliation perpetrated by LSF.   "[U]nder the NJLAD, … embarrassment, humiliation or short periods of depression are sufficient to support a claim of emotional distress."  Andujar v. Gen. Nutrition Corp., 2018 WL 1087494, at *13 (D.N.J. Feb. 28, 2018), aff'd, 767 Fed. Appx. 238 (3d Cir. 2019; See Klawitter v. City of Trenton, 395 N.J. Super. 302, 335–36 (App. Div. 2007) (humiliation and embarrassment sufficient to support a claim of emotional distress); Linton v. L'Oreal USA, 2009 WL 838766, *26 (D.N.J. Mar. 27, 2009) (denying defendant's motion for summary judgment on plaintiff's claim for emotional distress damages where plaintiff alleged a "short period of depression").  Under §1981, emotional distress damages may be supported by "embarrassment," "humiliation" and "sleeplessness," in

addition to more formal diagnoses of psychological injury.  <u>Gunby v. Pennsylvania Elec. Co.</u>, 840 F.2d 1108, 1121 (3d Cir. 1988).

Plaintiff sets forth the specifics of her personal humiliation, anxiety and psychological symptoms in her Declaration at ¶¶ 28-38, which is incorporated herein.  Plaintiff is entitled to a substantial emotional distress award based upon that testimony without more.  However, plaintiff's application is further supported by expert and medical documentation.

Medically, on October 1, 2015, Arku-Nyadia sought treatment at Valley Hospital due to chest pain and shortness of breath due to harassment at LSF.  Her medical records document "She reports that she is under a lot of stress with her job as a waitress, which causes tension headaches and migraines."[29]  Immediately following her termination by LSF, on June 30, 2017, Arku-Nyadia's primary care physician, Irina Tartakovsky, diagnosed Arku-Nyadia with "Anxiety Disorder," and "Sleep Disorders Organic Insomnia," related to "anxiety due to stress at work."[30]

Further, plaintiff is prepared to offer the testimony of Francesca Peckman, Psy.D., DABPS, CPQ, Clinical and Forensic Psychologist, as an expert witness in support of her claim for emotional distress damages.[31]  Dr. Peckman evaluated plaintiff on two occasions, administered various psychological tests and examined plaintiff's medical records.  Dr. Peckman concluded that plaintiff has suffered permanent psychological injuries as a result of LSF's conduct, with symptoms including "migraines, flashbacks, and panic attack" and which required hospitalization.

---

[29] Exhibit A to Silagi Decl.
[30] Exhibit B to Silagi Decl.
[31] Exhibit C to Silagi Decl.

The quantum of damages for emotional distress must be determined in each case based upon the particular facts, however the Court may consider comparative awards.  In an analogous case a court sitting in this district has recognized an emotional distress award in the amount of $75,000 to be within the acceptable range of awards.  Andujar v. Gen. Nutrition Corp., 2018 WL 1087494, at *14 (D.N.J. Feb. 28, 2018), aff'd, 767 Fed. Appx. 238 (3d Cir. 2019) (identifying emotional distress awards ranging from $75,000 to $200,000).  More generally, courts in this District recognize that a "[p]laintiff's many years of service as an employee of defendant" is a relevant factor in awarding emotional distress, which weighs in favor of a substantial award in this case, given LSF's admissions that plaintiff's tenure was "extremely long" and "exceptional." Boles v. Wal-Mart Stores, Inc., 2015 WL 4653233, at *3 (D.N.J. Aug. 5, 2015), aff'd, 650 Fed. Appx. 125 (3d Cir. 2016).  In the case at bar, Plaintiff was employed by the defendant for approximately 14 years. (ECF74, ¶7).

Accordingly, plaintiff is entitled to a substantial award of emotional distress damages in an amount to be fixed by the Court based upon the facts of the case and in accordance with the recognized range for comparable emotional distress damages awards of $75,000 to $200,000.

### (iii) A Substantial Award of Punitive Damages is Appropriate.

NJLAD, §1981 and Title VII provide for punitive damages in the event of willful conduct by upper management. Johnson v. Ry. Exp. Agency, Inc., 421 U.S. 454, 460 (1975) ("An individual who establishes a cause of action under s 1981 is entitled to … under certain circumstances, punitive damages"); Hightower v. Roman, Inc., 190 F. Supp. 2d 740, 753 (D.N.J. 2002) ("punitive damages are available in Title VII cases when the defendant employer engages in a discriminatory practice with malice or reckless indifference to the federally protected rights of an individual."); Lehmann v. Toys R Us, Inc., 132 N.J. 587, 625 (1993) ("employer should be

liable for punitive damages … in the event of actual participation by upper management or willful indifference."). An award of punitive damages may be entered in a default judgment. See, e.g., Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1153 (3d Cir. 1990) (upholding grant of punitive damages on a motion for default judgment under Fed. R. Civ. P. 55(b)).

Here, there is substantial evidence that defendant LSF acted with "malice or reckless indifference" to plaintiff's right to be free from discrimination and retaliation on the basis of race. The evidence sufficient to support an award of punitive damages is identified in detail in the plaintiff's Supplemental Statement of Material Facts in Opposition to Defendant Legal Sea Foods LLC'S Motion for Summary Judgment,[32] and summarized as follows:

- Plaintiff's General Manager Louis Vetsas actively espoused white supremacist and anti-immigrant views on social media. (ECF74, ¶¶33-42).

- Vetsas made highly offensive racist statements about African Americans and immigrants in the workplace, including that they "lie," "take advantage of the system" and "like their fried food." (ECF74, ¶¶43-51).

- LSF took a number of actions against plaintiff to diminish her income. (ECF74, ¶¶52-57).

- Plaintiff's General Manager Joshua DiMura received, but ignored, complaints of discrimination from plaintiff and other African American employees including complaints regarding Vetsas, instead recommending Vetsas for promotion. (ECF74, ¶¶63-71; 90-96).

- LSF engaged a deliberate pattern to falsely "paper" plaintiff's personnel file with severe discipline prior to her termination. (ECF74, ¶¶72-89).

---

[32] ECF 74.

- Plaintiff was terminated upon the false and ridiculous premise that she "stole" a plate of lobster ravioli, which she did not order or want and which would have cost her approximately $10.   (ECF74, ℙ97-112).

- During the termination meeting, Louis Vetsas had a "grin on his face" and "was really happy."  (ECF74, ℙ112).

- LSF's corporate upper management received, but failed to investigate, plaintiff's complaint about her wrongful termination in violation of their own policies.  (ECF74, ℙ117-131).

- Plaintiff's Manager Joshua DiMura was the subject of race discrimination complaints by six (6) other employees of LSF, most of whom were African American females.  (ECF74, ℙ132-174).

- LSF's corporate Human Resources Department was aware of all six (6) complaints but failed to mark them as "complaints" or to investigate or discipline DiMura, contrary to their own written policies.  (ECF74, ℙ175-179).

- DiMura lied under oath during his deposition to hide the multiple complaints of discrimination and retaliation that had been made against.  (ECF74, ℙ22-25).

As explained in the model civil jury charges for §1981 (6.4.2), the Court should craft punitive damages considering "the degree of reprehensibility of" the defendant's conduct; "the disparity between the harm or potential harm suffered by" the plaintiff and the punitive award; and the difference between the punitive award "and the civil penalties authorized or imposed in comparable cases." See BMW of North America, Inc. v. Gore, 517 U.S. 559, 575 (1996).

Applying the foregoing standards to the facts of the case, including the involvement of multiple managers and human resources personnel, and the intentional inaction of corporate upper management, a substantial award of punitive is appropriate.[33]

*(e)*     ***No Countervailing Considerations Weigh Against Entry of a Default Judgment.***

"[D]istrict courts must determine the appropriateness of default judgment by weighing: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default."   Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987)).   None of the countervailing factors warrant denial or reduction of a default judgment in this case because defendant LSF has knowingly decided not to defend this case with full information regarding plaintiff's claims and its potential exposure.

## II.     PLAINTIFF IS ENTITLED TO HER REASONABLE ATTORNEYS' FEES AND COSTS.

Plaintiff Suzy Arku-Nyadia ("Plaintiff") filed the subject Complaint against LSF on December 22, 2017. On March 11, 2021, default was entered against LSF. As a prevailing party, Plaintiff is entitled to an award of reasonable attorneys' fees and expenses under §1981, NJLAD and Title VII.  See 42 U.S.C. §1988, 42 U.S.C. §2000e-5(k) and N.J.S.A. 10:5-27.1.

The Supreme Court has explained that fee shifting is appropriate because a successful civil rights plaintiff acts "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority."  Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402

---

[33] See e.g., Swinton v. Potomac Corp., 270 F.3d 794, 817 (9th Cir. 2001) (applying *Kolstad* in a Section 1981 action and affirming a punitive damages award of $1,000,000 against an employer, where highly offensive language was directed at the plaintiff, coupled by the abject failure of the employer to combat the harassment).

(1968) (discussed by Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 416–17 (1978)).  Likewise, the New Jersey Supreme Court has explained, fee-shifting statutes like the NJLAD help ensure that its civil rights protections will be enforced:

> [M]ost of the responsibility for enforcement has to rest upon private citizens, who must go to court to prove a violation of law. . . .   But without the availability of counsel fees, these rights exist only on paper.  Private citizens must be given not only the rights to go to court, but also the legal resources.  If the citizen does not have the resources, his day in court is denied him; the congressional policy [that] he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers.

> Rendine v. Pantzer, 141 N.J. 292, 323 (1995) (citations omitted).

In order for Plaintiff to prevail on her discrimination claims, Plaintiff was required to engage in protracted litigation and motion practice concerning all of the facts related to her claims, including but not limited to, the disparate manner in which she was treated, the termination of her employment, and rebutting Legal Sea Food's contention throughout the litigation that Plaintiff was fired for cause. Having now prevailed on her claims, Plaintiff is entitled to an award of all of her reasonable attorneys' fees and costs.

### (a) Plaintiff is a Prevailing Party Entitled to Attorneys' Fees.

Generally, plaintiffs prevail "if they 'succeed on any significant issue in the litigation which achieves some of the benefit the part[ies] sought in bringing suit.'"  Singer v. State, 95 N.J. 487, 494 (1984); Blakey v. Cont'l Airlines, Inc., 2 F. Supp. 2d 598, 601–02 (D.N.J. 1998) ("A prevailing plaintiff entitled to a fee award is one who has succeeded on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing the suit"). See also Christiansburg Garment Co., 434 U.S. at 416–17 (a prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.").  In the instant case, Plaintiff is in the process of obtaining a default judgment and there is no dispute that Plaintiff is the prevailing party and is entitled to an award of reasonable attorneys' fees and costs.

***(b) Plaintiff's Claim for Attorneys' Fees is Appropriate and Reasonable.***

Having crossed the "statutory threshold," <u>Singer v. State</u>, 95 <u>N.J.</u> at 496, to find that plaintiff is a "prevailing party," the next question is to determine the reasonableness of the fees sought.  The method for calculating an attorneys' fee award under fee-shifting statutes is well-established.  Under both federal and New Jersey law, the starting point for determining any reasonable fee is to calculate a "lodestar" amount; that is, the number of hours reasonably expended multiplied by a reasonable hourly rate. <u>Hensley v. Eckerhart</u>, 461 <u>U.S.</u> 424, 433 (1983) and <u>Rendine v. Pantzer</u>, 141 <u>N.J.</u> 292, 334 (1995).  As explained by the New Jersey Supreme Court:

> The most useful starting point for determining the amount of a reasonable fee . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This arithmetic result or "lodestar" may then be adjusted upward or downward…
>
> The initial focus in the calculus is appropriately directed to the time expended in pursuing the litigation. The most important factor in dealing with this part of the equation is the actual results obtained.
>
> …If the results obtained are fully effective in vindicating plaintiff's rights, counsel should recover for all hours reasonably expended on the litigation.
>
> <u>Singer v. State</u>, 95 N.J. 487, 499-500 (1984) (emphasis added, citations omitted).

In this case, all of the claims that Plaintiff asserted were related to the way she was discriminated against by the LSF based on her status as an African American woman. All of Plaintiffs claims arose from a common core of intertwined facts. In order to prevail on any of her theories of liability, Plaintiff was required to litigate the facts regarding all of her claims.

Finally, it bears emphasis that the fee award need not be proportional to a final judgment or jury verdict.  This was settled at least as early as <u>City of Riverside v. Rivera</u>, 477 <u>U.S.</u> 561 (1986), where the Supreme Court upheld a fee award of $245,000, where the jury's verdict was

only for $33,350.  Federal courts have since reaffirmed this point repeatedly.  Thus, for example, in Abrams v. Lightolier, Inc., 50 F.3d 1204, 1222 (3d Cir. 1995), the fee award under the NJLAD exceed the verdict by approximately $75,000.  Nonetheless, the Third Circuit rejected the employer's attack on the attorneys' fees, stating flatly, "there is no rule that the fees award may be no larger than the damages award."  Any "proportionality" argument was simply rejected as a "misstatement of law."  Id.

The New Jersey Supreme Court has followed the plurality holding in City of Riverside.  Thus, in Szczepanski v. Newcomb Medical Center, 141 N.J. 346 (1995), the Court rejected a "proportionality" argument for fee awards.

> We decline to construe New Jersey's fee-shifting statutes to require proportionality between damages recovered and counsel-fee awards even if the litigation, as in this case, vindicates no rights other than those of the plaintiff.  To be sure, an overriding public interest is also served by plaintiff's successful prosecution of this suit for retaliatory discharge under the LAD.  Plaintiff's recovery of damages fulfills and vindicates the legislative purpose of preventing employers from retaliating unjustly against employees who oppose practices or acts forbidden by the LAD.  The LAD's fee-shifting provision, N.J.S.A. 10:5-27.1, was intended to assure that counsel for litigants like plaintiff will receive reasonable compensation for services reasonably rendered to effectuate the LAD's objectives, even if the contingent fee payable based on the damages recovered did not constitute a reasonable fee for those services.

Szczepanski, 141 N.J. at 366.

### i. Plaintiff's Hours are Reasonable.

In order to determine the reasonable amount of attorneys' fees to be awarded, the Court must utilize the lodestar analysis, which courts determine by calculating the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley, 461 U.S. 424, 433 (1983).  The Third Circuit has adopted the lodestar method.  Student Public Interest Research Group of New Jersey, Inc. v. AT&T Bell Laboratories, 842 F.2d 1436, 1448 (3d Cir. 1988).  Hensley instructs that courts are to exclude from the determination of the lodestar as

unreasonable only the hours which are "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. at 434.

In the instant case, Plaintiff submits that the number of hours expended were reasonable, especially in light of the facts and issues involved and the vigorous and obstructive manner in which the defense was put forward in the litigation.  A court should view with great skepticism any claim to reduce a fee award when the party requesting the reduction itself engaged in a long and hard fight only to then turn around and claim that little or no time should have been necessary to accomplish the same result. Mitroff v. Xomox Corp., 38 EPD ¶35, 654 (S.D. Ohio 1985), rev'd on other grounds, 797 F.2d 271 (6th Cir. 1986); Blowers v. Lawyers Cooperative Pub. Co., Inc., 526 F. Supp. 1324, 1327 (W.D. N.Y. 1981). As this Court is aware from the number and extent of the filings and discovery issues in this case, Defendant engaged in a vigorous and thorough fight.

Plaintiff has provided itemized time records to support his claim for attorneys' fees. See **Exhibit A** to the Declaration of John Messina. This presentation of billable hours is "set forth in sufficient detail" to allow this Court to ascertain the reasonableness of the time spent.  See Rendine v. Pantzer, 141 N.J. at 337.  Indeed, in an employment retaliation case, the Third Circuit reaffirmed that "computer-generated summaries of time spent by each attorney," similar to the time records present here, meet the standards for specificity necessary to allow the trial court "to determine if the hours claimed are unreasonable for the work performed."  Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1037-38 (3d Cir. 1996) (citations omitted); see also Rode v. Dellarciprete, 892 F.2d 1177, 1190-91 (3d Cir. 1990).

A review of these time records reveals plaintiff is only seeking reimbursement for hours reasonably expended, that is, "those that competent counsel reasonably would have expended to

achieve a comparable result." Rendine v. Pantzer, 141 N.J. at 336; see also Szczepanski v. Newcomb Medical Center, Inc., 141 N.J. at 355.  None of the hours for which compensation is sought could be described as "excessive, redundant, or otherwise unnecessary." See Rendine v. Pantzer, 141 N.J. at 335 (citation omitted).

Courts have persistently approved as reasonable fee awards for much more significant expenditures of time than anything sought in this case.  See, e.g., Tenafly Eruv Ass'n v. Borough of Tenafly, 195 Fed. Appx. 93, 99, 2006 U.S. App. LEXIS 22671 (3d Cir. Sept. 1, 2006)(rejecting challenge, inter alia, to 22 hours spent drafting just one point heading for a single brief); Arc of New Jersey, Inc. v. Voorhees, 986 F. Supp. 261, 269 (D.N.J. 1997) (rejecting challenge to 16.3 hours spent drafting complaint); id. at 270 (approving 23.85 hours for time spent drafting a single point heading in a brief opposing summary judgment).

Additionally, Plaintiff's fees may not be considered as redundant in that Plaintiff utilized the services of two attorneys (in the case at bar, a partner and a senior associate). The fact that Plaintiff utilized the services of two attorneys is not a reason to reduce the fees awarded.  Courts have confirmed that there is no reason why civil rights plaintiffs should be limited to fewer lawyers than necessary to handle the case.  Hall v. Ochs, 817 F.2d 920 (1st Cir. 1987).  The use of a team of attorneys who divide up the work is common for both plaintiff and defendant work. Jean v. Nelson, 863 F.2d 759, 772 (11th Cir. 1988), aff'd on other grounds, 496 U.S. 154 (1990).

Notably, there are substantial factors that have made the litigation of this case particularly long and obstreperous.  Defense counsel took a particularly contentious approach to the case, refusing to provide discovery and/or reach agreements on discovery matters that are easily resolved with other counsel in other cases. By way of example, and as set forth in more detail in letters from plaintiff's counsel to the Hon. Leda D. Wettre, U.S.M.J., dated September

18, 2019 (ECF 45), December 20, 2019 (ECF 58 ) and January 22, 2020 (ECF 61), plaintiff was required to seek the assistance of the Court on more than one occasion to force defendants to comply with prior court orders, to identify and produce documents relating to complaints of discrimination, harassment and/or retaliation made against the defendants by other employees, and to seek extension of fact discovery based on defendant's obstructive tactics and failures to comply with discovery demands.  Plaintiff sought discovery sanctions against LSF on multiple occasions.

In light of these factors, it is clear that the hours expended by Plaintiff's counsel in this litigation, which was pending for four years, are reasonable and were necessary to the pursuit of Plaintiff's claims.

### ii.  Plaintiff is Entitled to the Current Market Rate.

According to the New Jersey Supreme Court, "[t]o take into account delay in payment, the hourly rate at which compensation is to be awarded should be based on <u>current rates</u> rather than those in effect when the services were performed."  <u>Rendine v. Panzer</u>, 141 <u>N.J.</u> at 337 (emphasis added).   The New Jersey Supreme Court has described the determination of a reasonable hourly rate for a fee award as follows:

> Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community.  Thus, the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.

<u>Id</u>. (citation omitted). To establish the reasonable hourly rate of an attorney, the Third Circuit employs the "community market rate approach," which requires the court to "assess the experience and skill of the attorneys and compare their rates to those of comparable lawyers in the private business sphere." <u>Student Public Interest Research Group of New Jersey</u>, 842 <u>F.2d</u> at

1447.  The New Jersey Supreme Court has cautioned that as long as the trial court is satisfied that "the assigned hourly rates are fair, realistic, and accurate," the "determination need not be unnecessarily complex or protracted."  See Rendine 141 N.J. at 344 (expressing Court's "desire to avoid ancillary litigation over counsel-fee awards"); Fagas v. Scott, 251 N.J. Super. 169, 201 (Law Div. 1991) (the "court did not need expert testimony" to approve hourly rates sought, based on testimony of plaintiff's counsel).  In Lockley v. Turner, 344 N.J. Super. 1 (App. Div. 2001), aff'd as modified on other grounds, 177 N.J. 413 (2003), for example, the defendants challenged the hourly rates for both of the partners who "double teamed" at the trial.  The Appellate Division, however, brusquely dismissed this concern.  "The rates are undoubtedly generous but we are not blind to the sums paid to experienced counsel in other matters."  Lockley v. Turner, 344 N.J. Super. at 28.

Further, The CLS Fee Schedule (**Exhibit B to the Messina Decl.**) has been recognized by the Third Circuit as evidence of the "community market rate."  The CLS schedule supports the conclusion that an attorney in this Circuit with Mr. Messina's experience and qualifications is entitled to the requested rate of $525 per hour and that a senior associate with the experience and qualifications of Evan Silagi is entitled to the requested rate of $300 per hour.

Following the analysis set forth in Rendine, there can be no dispute that the hourly rates sought are reasonable, based on prevailing market rates and counsel's skill, experience and reputation.  See Declarations of John Messina, Esq., Evan Silagi, Esq., James E. Burden, Esq. and Fred Shahrooz-Scampato, Esq.  Accordingly, Plaintiff is entitled to an award of attorneys' fees as of November 30, 2021 in the following amount:

| Attorney | Hours | Rate | Fee |
|----------|-------|------|-----|
| John Messina | 235.10 | $525 | $123,427.50 |
| Evan Silagi | 434.00 | $300 | $130,200 |

| | | | |
|---|---|---|---|
| Tamara Faddish, Law Clerk | 40.30 | $150 | $6,045 |
| Amrit Singh, Law Clerk | 7.68 | $150 | $1,152 |
| Tom Patania, Law Clerk | 11.70 | $150 | $8,952 |
| **Total** | | | **$262,579.50** |

*(c) Plaintiff is Entitled to a Fee Enhancement.*

In a departure from federal law, the New Jersey Supreme Court has relaxed significantly the standards for granting enhancements of awards under fee-shifting statutes, making them the rule rather than the exception.

> We hold that the trial court, after having carefully established the amount of the lodestar fee, should consider whether to increase that fee to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome. . . . [W]e have concluded that a counsel fee awarded under a fee-shifting statute cannot be "reasonable" unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed.

Rendine v. Pantzer, 141 N.J. at 337-38.  The rule laid down in Rendine established enhancement as the presumption in contingent or partially contingent fee cases.

> We conclude that contingency enhancements in fee-shifting cases ordinarily should range between five and fifty percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar.  Such enhancements should never exceed one-hundred percent of the lodestar. . . .

Id. at 343.  See also Coleman v. Kaye, 87 F.3d 1491, 1511 (3rd cir. 1996)("[t]he Rendine court elected to depart from [United States] Supreme Court precedent on this issue and thereby established a rule that strongly favors the award of contingency enhancements to prevailing parties under the LAD").

The risk that the New Jersey Supreme Court recognizes as warranting an enhancement of the fee award (i.e., the risk that the attorney will not receive payment if the suit does not succeed)

is even more apparent and enhanced in this particular case, where even though plaintiff has prevailed in obtaining a judgment, there is a risk of non-payment based on the defendant's sale of assets to a successor and the ultimate outcome of the claim regarding successor liability. Plaintiff seeks a 40% enhancement of the lodestar in this case, based on the contingent nature of this case, and other factors.   The retainer agreement in this case was a complete contingency retainer agreement.

This lawsuit involves claims under both New Jersey (NJLAD) and Federal law (§1981 and Title VII), and District Courts considering this issue have held that a fee enhancement may be appropriate. See Blakey v. Cont'l Airlines, Inc., 2 F. Supp. 2d 598, 608 (D.N.J. 1998) (discussing the issue and awarding an enhancement).   See also Hurley v. Atlantic City Police Department, 933 F. Supp. 396, 430 (D.N.J. 1996) (applying a one third enhancement under New Jersey law).  In Rendine, based on the *partial* contingency retainer and the "defendant's vigorous resistance to each element of plaintiffs' claims" during the course of litigation, the Supreme Court "assess[ed] plaintiffs' counsel's risk of nonpayment as moderate," and awarded a "contingency enhancement equal to one-third of the lodestar fee," in the absence of any specific "legal risks" of non-recovery.  Rendine v. Pantzer, 141 N.J. at 344-45.  Compare Bung's Bar & Grille, Inc. v. Florence Township, 206 N.J. Super. 432, 474-75(L. Div. 1985)(awarding 40% enhancement based on extensive litigation required and quality of representation).

One Court's application of Rendine provides a good example of why a 40% enhancement is appropriate here.   In Lockley v. Turner, 344 N.J. Super. at 29, the Court approved a 60% enhancement.  The Court explained its reasons as follows:

> We turn then to the multiplier of 60% adopted by the trial court for services rendered through the time of trial.   The Court in Rendine noted that "the enhancement in typical contingency cases [should] rang[e] between twenty and

thirty-five percent of the lodestar." . . .   We do not think this case could be considered a "typical contingency" case and are unable to view the trial court's selection of 40% for contingency as unwarranted.

To this, the trial court added an additional 20% for the public interest served in advancing the purposes of NJLAD.  In <u>Rendine</u>, the Court indicated its agreement with the plurality opinion in <u>City of Riverside v. Rivera</u> . . . which acknowledged that "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." . . . <u>Lockley v. Turner</u>, 344 N.J. Super. at 29 (citations omitted).

Here, Plaintiff's attorneys worked on a complete contingency basis and advanced the costs associated with the case.  They were only entitled to a fee if they obtained a recovery for Plaintiff.  Accordingly, Plaintiff's counsel seeks an enhanced fee in the following amount.

| Lodestar | Rendine Enhancement | Total Fee |
|---|---|---|
| $262,579.50 | 40% | $367,611.30 |

In addition to the above, Plaintiff will provide a supplemental certification of hours spent on preparing and briefing the instant motion along with Plaintiff's reply brief on this motion

### (d) Plaintiff is Entitled to Costs.

Under the law, most courts have awarded out-of-pocket expenses, including deposition costs, expert witness fees, travel, postage, photocopying and so forth, when itemized as reasonable expenses and made part of the attorney's fee application and not otherwise part of a bill of costs.  <u>Boston and Maine Corp. v. Moore</u>, 776 <u>F.2d</u> 2 (1st Cir. 1985).  In the instant case, the fee application includes by reference the Summary of Costs, which contains a detailed itemization of costs and expenses for which Plaintiff seeks compensation. See **Exhibit A** to Messina Declaration**.**

It is settled law under fee-shifting statutes that a prevailing party may "recover[] for such items as meals, lodging, messenger fees, long distance telephone calls, photocopying, depositions and copies, trial transcripts, and other out of pocket expenses that are of the type that an attorney would normally bill a fee paying client." Council Enterprises, Inc. v. Atlantic City, 200 N.J. Super. 431, 443(L. Div. 1984); Fagas v. Scott, 251 N.J. Super. at 207.  The award of deposition costs is specifically provided by statute, N.J.S.A. 22A:2-8, and courts repeatedly have held that expert witness fees are likewise recoverable as costs.  Bung's Bar & Grille, Inc. v. Florence Township, 206 N.J. Super. at 478-86; Fagas v. Scott, 251 N.J. Super. at 197-201; see also In re Caruso, 18 N.J. 26, 39 (1951); Kowaleski v. Allstate Ins. Co., 238 N.J. Super. 210, 218 n.4 (App. Div. 1990).  To date, Plaintiff has incurred $13,867.57 in costs in this matter. **Exhibit A** to Messina Declaration**.**

## III. PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST.

Courts have repeatedly recognized that pre-judgment interest is appropriate in civil rights employment cases, because the statutory remedies provided are most analogous to tort actions. See, e.g., Milazzo v. Exxon Corp., 243 N.J. Super. 573, 575-76 (Law Div. 1990); Gallo v. Salesian Soc., Inc., 290 N.J. Super. 616, 661-62 (App. Div. 1996); Abrams v. Lightolier, Inc., 841 F. Supp. 584, 599 (D.N.J. 1994), aff'd, 50 F.3d 1204 (3d Cir. 1995); McKenna v. Pacific Rail Serv., 817 F. Supp. 498, 518 (D.N.J. 1993), vacated and remanded on other grounds, 32 F.3d 820 (3d Cir. 1994), appeal after remand, 61 F.3d 895 (3d Cir. 1995) (table).

Federal law does not provide for a specific prejudgment interest rate.   The method of calculating pre-judgment interest under New Jersey state law is set out by R. 4:42-11.  The interest rates under R. 4:42-11 are as follows:  2.5% for 2017, 2.5% for 2018, 3.5% for 2019, 4.5

for 2020 and 3.5% for 2021.  Plaintiff would reserve the right to provide a calculation of pre-judgment interest once the Court has fixed the amount of LSF's liability.

## **CONCLUSION**

As a prevailing party under the New Jersey Law Against Discrimination, and for the reasons set forth above, Plaintiff respectfully requests that the Court enter judgment awarding Plaintiff:

- Economic Damages in the amount of $46,808;

- Emotional Distress Damages in an appropriate amount between of $75,000 to $200,000;

- Punitive Damages in an appropriate amount to be determined by the Court;

- Attorneys' Fees in the amount of $367,611;

- Litigation Expenses and Costs in the amount of $13,868;

- Prejudgment Interest in an appropriate amount.


Respectfully submitted,


/s/ JOHN MESSINA_____