## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SUZY ARKU-NYADIA, | Civil Action No. |
| Plaintiff, | 18-1089 (SDW) (LDW) |
| v. | **REPORT & RECOMMENDATION** |
| LEGAL SEA FOODS, LLC, *et al.*, |  |
| Defendants. |  |

Before the Court is plaintiff Suzy Arku-Nyadia's motion for entry of a default judgment, pursuant to Federal Rule of Civil Procedure 55(b)(2), against defendant LSFW LLC, formerly known as Legal Sea Foods, LLC ("Legal Sea Foods"). (ECF No. 136). The Honorable Susan Davis Wigenton, U.S.D.J. referred this motion to the undersigned for a Report and Recommendation. The motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b). Having considered the relevant written submissions (ECF Nos. 136-143, 151, 154-157) and for good cause shown, the Court recommends that plaintiff's motion for default judgment be **GRANTED,** but that certain of her damages requests be denied, for the reasons set forth below**.**

## I.      BACKGROUND

The Court presumes familiarity with the background of this action. Briefly, plaintiff Suzy Arku-Nyadia, a former waitress at Legal Sea Foods, commenced this suit for race and gender discrimination against her former employer. In the initial complaint, plaintiff alleged disparate treatment (Count One), retaliation (Count Two), and a hostile work environment (Count Three) against Legal Sea Foods in violation of the New Jersey Law Against Discrimination ("NJLAD"). (ECF No. 1 at 16–18). Following nearly two years of discovery, Legal Sea Foods moved for

summary judgment.  (ECF No. 68).  Judge Wigenton granted the motion with respect to plaintiff's gender discrimination claims and denied it with respect to her race discrimination claims.  (ECF No. 83).

Soon after the motion for summary judgment was denied as to the race discrimination claims, defense counsel informed the Court that Legal Sea Foods' assets had been acquired by a separate entity and that Legal Sea Foods would no longer be defending this action.  (ECF No. 87).  The Court issued an Order to Show Cause directing a representative of Legal Sea Foods to show cause why its Answer should not be stricken and default entered against it for failure to defend this action.  (ECF No. 91).  In response, defendant advised that it had "made the decision not to defend the myriad [of] lawsuits and claims" asserted against it, including the instant case.  (ECF No. 92-2).  The undersigned issued a Report and Recommendation that Legal Sea Foods' Answer be stricken and default entered against it, which Judge Wigenton adopted by Order of March 11, 2021.  (ECF Nos. 94, 97).  Default was entered the same day.  (ECF No. 97).

Plaintiff filed an Amended Complaint on June 4, 2021, impleading defendant Legal Sea Foods Restaurant Group Inc. ("LSFRG") (initially named as PPX Hospitality Brands), on the theory that it is the successor in interest to defaulting defendant Legal Sea Foods.  (ECF No. 103).  The operative claims against Legal Sea Foods, however, remain the same LAD claims as to which default was entered.  (See ECF No. 165).[1]

---

[1]      There has been motion practice concerning the appropriate claims against Legal Sea Foods that is described in other opinions and need not be repeated here.  (*See* ECF Nos. 165, 167, 178).

Plaintiff filed the instant motion for default judgment in December 2021.  (ECF No. 136). Legal Sea Foods has not submitted opposition.[2]  The Court now turns to the motion.

## II.    DISCUSSION

Plaintiff asks this Court to enter default judgment against defendant Legal Sea Foods and to award her economic, emotional distress, and punitive damages, as well as attorneys' fees, litigations expenses and costs, and prejudgment interest.  (ECF No. 137 at 5).[3]  The Court first considers whether the threshold requirements for entry of default judgment have been satisfied and then turns to the issue of damages.

Federal Rule of Civil Procedure 55 governs default proceedings and authorizes a plaintiff, following entry of default, to seek default judgment against a defendant who fails to answer or otherwise defend the lawsuit. Fed. R. Civ. P. 55(b).  It is well settled in the Third Circuit that "the entry of a default judgment is left primarily to the discretion of the district court." *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951).  Before entering default judgment, the Court must:  "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved

---

[2]    Defendant LSFRG cross-moved to stay adjudication of the instant motion.  (ECF No. 151). That cross-motion was denied by separate Opinion of this Court. (ECF No. 179).

[3]    For the first time in Plaintiff's Reply Brief In Opposition To Defendant's Cross Motion To Stay And In Further Support of Plaintiff's Motion For Default Judgment, she also moved for a Pre-Judgment Writ of Attachment directing LSFRG to retain any monies scheduled to be transferred to Legal Sea Foods pursuant to the asset sale transaction.  (*See* ECF Nos. 154, 155-2). Procedurally, plaintiff's request for such relief in a reply brief is improper.  In any event, given that any entitlement to a "pre-judgment" remedy will soon be mooted by entry of judgment, plaintiff may make an appropriate application for a writ of execution in accordance with Fed. R. Civ. P. 69(a) after entry of judgment.

damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, Civ. A. No. 14-5608 (MCA), 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015) (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008)).  Additionally, the Court must assess the appropriateness of entering default judgment in light of various other factors set forth in *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987).  *See Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).  The Court addresses each of these factors below.

A.  Jurisdiction and Service

Jurisdiction and service are established in this action.  Legal Sea Foods acknowledged service of the Summons and Complaint in December 2017.  (ECF No. 1, ¶ 1).  It further acknowledged subject matter jurisdiction under 28 U.S.C. § 1332 in its removal petition (ECF No. 1), and the Court confirms that the parties are diverse in their citizenship and that the amount in controversy exceeds $75,000.[4]  Personal jurisdiction was not contested by Legal Sea Foods because plaintiff's claims arise out of her employment at its New Jersey restaurants.  (*See* ECF No. 1, Exh. A, ¶ 6; *see also Linwood Trading Ltd. v. E.S. Recycling Express Corp.,* Civ. A. No. 14-6332 (MCA), 2017 WL 1882490, at *3 (D.N.J. May 9, 2017) ("[S]pecific personal jurisdiction arises when the defendant's forum-related activities gave rise to the plaintiff's cause of action, and permits the court to exercise jurisdiction only over those specific claims.")).

---

[4]     Plaintiff is a resident of New Jersey, and Legal Sea Foods at the time of removal was a citizen of Massachusetts.  (ECF No. 1, ¶ 9).  Both plaintiff and Legal Sea Foods acknowledged the amount in controversy threshold is met.  (*Id.*, ¶¶ 9-11; Complaint, ECF No. 1, Exh. A, ¶ 1).  Moreover, the addition of defendant LSFRG as a party to this case did not destroy diversity, as that entity is also a citizen of Massachusetts.  (ECF No. 103, ¶ 3).

B.  The Complaint Pleads Viable Causes of Action

Where, as here, a defaulting defendant's answer has been stricken, "the Court must accept the truthfulness of [plaintiff's] well pled allegations as to liability." *Linwood Trading*, 2017 WL 1882490, at *5.  Moreover, plaintiff's claims of race discrimination survived summary judgment, demonstrating their viability.  (ECF No. 83).

C.  Appropriateness of Default Judgment

The Court next considers whether default judgment is appropriate in light of the Third Circuit's *Emcasco* factors:  "(1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default."  *Chanel, Inc.*, 558 F. Supp. 2d at 537 (citing *Emcasco*, 834 F.2d at 73).  The Court concludes that these factors weigh in favor of entry of default judgment.

First, because Legal Sea Foods' Answer was stricken and default was entered against it due to its failure to defend after denial in part of its motion for summary judgment, and based upon the facts alleged in plaintiff's Complaint, the Court concludes that defendant does not have a meritorious defense.  *See Linwood Trading*, 2017 WL 1882490, at *5; *Colony Ins. Co. v. Kwasnik, Kanowitz & Assocs., P.C.*, No. 12-cv-00722 (NLH) (AMD), 2014 WL 2920810, at *6 (D.N.J. June 27, 2014) (holding that, where the defaulting defendant's answer was stricken for failure to comply with the court's order, he was "effectively in the same position as if he never answered [the] complaint, and therefore [was] deemed to have admitted every well-pleaded allegation in the Complaint").  Second, the Court finds that plaintiff Ms. Arku-Nyadia will suffer prejudice absent entry of default judgment as she would have no other means of obtaining relief from this defendant.  Finally, the Court finds that Legal Sea Foods acted culpably in failing to participate in this action

5

following partial denial of summary judgment, as it affirmatively communicated to the Court its decision willfully to default in all pending litigation.  (ECF No. 92-2).

D.  Damages

The Court, having found that the foregoing requirements for default judgment have been met and that entry of judgment against Legal Sea Foods is appropriate, now turns to the issue of damages.  District courts have "considerable latitude in determining the amount of damages" that are appropriate in a given case.  *Malik v. Hannah*, 661 F. Supp. 2d 485, 493 (D.N.J. 2009).  In considering a motion for default judgment, the Court "need not accept the moving party's legal conclusions or allegations relating to the amount of damages."  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).  Instead, the Court must be satisfied by a preponderance of the evidence that damages should be awarded.  *See Looi v. Wang,* Civ. A. No. 13–1684 (SRC), 2015 WL 64650, at *2 (D.N.J. Jan. 15, 2015).  Where the claimed damages are not for a "sum certain or for a sum which can by computation be made certain … the court may conduct such hearings or order such references as it deems necessary and proper."  *Comdyne I, Inc.*, 908 F.2d at 1149 (internal quotations omitted); Fed. R. Civ. P. 55(b)(2).  "Damages, however, may be determined without a hearing 'as long as [the court] ensure[s] that there [is] a basis for the damages specified in the default judgment.'"  *Venus v. Polize, Inc*., Civ. A. No. 16-679 (MAS) (LHG), 2017 WL 6626314, at *2 (D.N.J. Dec. 28, 2017) (quoting *Malik*, 661 F. Supp. 2d at 493).

Plaintiff seeks by this motion an award of the following damages:  $46,808 in back and front pay, emotional distress damages "in an appropriate amount between $75,000 to $200,000," and punitive damages as deemed appropriate by the Court.  Plaintiff also seeks attorneys' fees in

the amount of $367,611, litigation costs totaling $13,868, and prejudgment interest.  (ECF No. 137 at 1).  The Court addresses each category in turn.

1.  Back Pay

Plaintiff seeks an award of $23,798 in back pay, arguing that her wages were diminished by race discrimination.  (ECF No. 137 at 10).  Plaintiff contends that, from 2015 to 2017, her income was reduced by approximately twenty percent as a result of Legal Sea Foods' wrongful conduct, including "removing plaintiff from shifts, removing plaintiff from her more lucrative position as 'checker,'[5] sending plaintiff home from shifts, [and] removing plaintiff from favorable tables and forcing plaintiff to share larger tables which other servers were not required to share." (*Id.*).  Her estimated twenty percent diminution in earnings is "based upon [her] experience working in the restaurant industry."  (ECF No. 138, ¶ 20).

Under the NJLAD, a victim of discrimination may recover back and front pay losses.  *See Hampton v. Prot. Plus Sec. Corp.,* Civ. A. No. 14-CV-6982-BRM-TJB, 2017 WL 714351, at *4 (D.N.J. Feb. 23, 2017); *Strenkoski v. Apex Chem. Inc.*, Civ. A. No. 13-CV-2201 (WJM), 2014 WL 2573266, at *1 (D.N.J. June 6, 2014).  An award of back pay is intended "to make the discriminatee whole by reimbursement of the economic loss suffered." *Goodman v. London Metals Exch., Inc.*, 86 N.J. 19, 35 (1981).   It is calculated by measuring the difference between plaintiff's "actual earnings for the period and those [she] would have earned absent the discrimination by the defendant." *Weiss v. Parker Hannifan Corp.*, 747 F. Supp. 1118, 1132 (D.N.J. 1990).  Plaintiff is required to provide evidence of what she earned between the time that the discriminatory conduct

---

[5]    The position of "checker" is supervisory in nature and is akin to "head waitress."  (ECF No. 83 at 2).

began and the time she found comparable employment, comparing it to what she would have earned in that time had she not suffered discrimination.  *See Gunby v. Pennsylvania Elec. Co*., 840 F.2d 1108, 1119 (3d Cir. 1988), *cert. denied*, 492 U.S. 905 (1989); *Andujar v. Gen. Nutrition Corp.*, Civ. A. No. 14-7696 (JS), 2018 WL 1087494, at *10 (D.N.J. Feb. 28, 2018), *aff'd*, 767 F. App'x 238 (3d Cir. 2019); *Weiss*, 747 F. Supp. at 1132.  Although any uncertainty is "resolved against a discriminating employer," plaintiff must prove her damages beyond "mere speculation or guess."  *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 156 (3d Cir. 1999); *Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*, 734 F.2d 133, 148 (3d Cir. 1984), *cert. denied*, 469 U.S. 1072 (1984).

Although the contents of plaintiff's affidavit and deposition testimony of April 26, 2019 support her allegations of defendant's discriminatory conduct (*see* ECF No. 138, ¶¶ 17-19; Pl.'s Dep. Tr., ECF No. 74-1 at 142-45), the Court struggles to find any evidence from which it may reach a "just and reasonable inference" of the extent of damages suffered.  *Malley-Duff,* 734 F.2d at 148**.**  While "the law does not command mathematical preciseness from the evidence in finding damages, sufficient facts must be introduced so that a court can arrive at an intelligent estimate without speculation or conjecture."  *Rochez Bros., Inc. v. Rhoades,* 527 F.2d 891 (3d Cir. 1975), *cert. denied*, 425 U.S. 993 (1976); *see also Weiss*, 747 F. Supp. at 1132 (explaining that back pay awards must be "based on a reasonable method of calculation").  Here, plaintiff sets forth no basis for her twenty percent pay loss estimate and, after extensively reviewing the record before it, the Court gleans no way to undertake the calculation itself.  As plaintiff bears the burden of proving her damages by a preponderance of the evidence, which requires her to put forth a reasonable amount of information to enable the Court to estimate the damages without engaging in

8

speculation, the undersigned respectfully recommends that the $23,798 back pay award be denied. *See Malley-Duff*, 734 F.2d at 148 (noting that "a reasonable quantity of information must be supplied by plaintiff" so that a fair estimate of the amount of damages may be drawn from the evidence).

The Court does recommend, however, that plaintiff recover back pay damages for the three-week period between her termination at Legal Sea Foods and her commencement of new employment at Capital Grille. *See Weiss*, 747 F. Supp. at 1132 (noting back pay period continues until a plaintiff takes comparable job); ECF No. 137.   It is therefore recommended that plaintiff be awarded back pay in the amount of $2,627.33 — the prorated amount for the twenty-five days she was unemployed, calculated at the rate of her 2017 approximate monthly income of $3,152.80. (ECF No. 137 at 10).

   2.   Front Pay

Plaintiff seeks an award of front pay in the amount of $19,069 to compensate her for alleged losses following her termination from Legal Sea Foods, despite securing more lucrative substitute employment within approximately three weeks.  (ECF No. 137 at 10-11).  Although plaintiff's earnings at Capital Grille exceeded her earnings at Legal Sea Foods, she claims that the front pay calculation should be made based upon what she *would have* earned at Legal Sea Foods had she not experienced discrimination, rather than what she actually earned.[6]  (*Id.*).  Plaintiff's requested front pay award therefore incorporates the inflated 2017 wage rate she sought by way of back pay, which the Court above found unduly speculative.  (*Id.*).

---

[6]    Plaintiff's actual gross earnings while employed by Legal Sea Foods amounted to $33,796 (2015), $29,861 (2016), $15,764 (from January 1 to June 1, 2017).  (ECF No. 137 at 10).  In 2018, while employed by Capital Grille, plaintiff earned $40,617.  (ECF No. 138, ¶ 25).

9

Awards of front pay are intended to make victims of discrimination whole by measuring the ongoing economic harm that may be experienced by a plaintiff following wrongful discharge. *See Quinlan v. Curtiss-Wright Corp.*, 425 N.J. Super. 335, 350 (App. Div. 2012). Front pay is thus unavailable where there has been no lost future earnings. *See Blum v. Witco Chem. Corp.*, 829 F.2d 367, 375 (3d Cir. 1987) (explaining that where a plaintiff has secured replacement employment, that salary must be "set off from a front pay award consistent with plaintiff's duty to mitigate damages"). Because plaintiff experienced no front pay loss (unless the Court relies on the inflated back pay amount that the undersigned rejected above as unsupported by the requisite measure of proof), the undersigned respectfully recommends that her request for front pay damages be denied.

3. Emotional Distress

Emotional distress damages, though sometimes difficult to assess with precision, are available to victims of discrimination under the NJLAD, and plaintiffs may seek such damages upon default judgment. *See Klawitter v. City of Trenton*, 395 N.J. Super. 302, 335–36 (App. Div. 2007); *Malik,* 661 F. Supp. 2d at 494 (finding existing record sufficient to grant damages for pain and suffering on default judgment motion). The New Jersey Supreme Court has counseled that victims of discrimination are entitled under the NJLAD to "obtain redress for mental anguish, embarrassment, and the like, without limitation to severe emotional or physical ailments." *Tarr v. Ciasulli*, 181 N.J. 70, 81 (2004), *aff'd*, 194 N.J. 212 (2008).

Although precision in damages calculations is not required, and independent corroborative evidence and expert testimony are not necessary to support an award of emotional distress damages, the record must provide "a sufficient foundation from which the Court may make a fair

and reasonable estimate." *Smith v. Kroesen*, Civ. A. No. 10–5723 (NLH) (AMD), 2015 WL 4913234, at *6 (D.N.J. Aug. 18, 2015); *see also Hampton,* 2017 WL 714351, at *5. After reviewing the relevant evidence, the Court finds that it may make an appropriate computation of emotional distress damages based on plaintiff's submissions. *See Rainey v. Diamond State Port Corp.*, 354 F. App'x. 722, 724 (3d Cir. 2009); *Summit Tr. Co. v. Paul Ellis Inv. Assocs*., LLC, No. 12-CV-6672, 2013 WL 3967602, at *4 (E.D. Pa. Aug. 2, 2013) (explaining that hearing may be unnecessary where detailed affidavits and documentary evidence suffice to determine damages).

Plaintiff seeks an award of emotional distress damages in an amount between $75,000 and $200,000. (ECF No. 137 at 32). In support of her application for these damages, plaintiff submitted a sworn Declaration providing that she suffered "embarrassment, humiliation, and other psychological injuries as a result of the harassment" she endured while employed by Legal Sea Foods. (ECF No. 138, ¶ 28). Plaintiff also states that she "suffered repeated panic attacks at and immediately before work," for which she sought medical treatment on several occasions, has experienced "repeated nightmares" and "disassociation," and has suffered from ongoing nervousness, humiliation, anxiety, and depression. (*Id.* ¶¶ 30-36). In further support of her request for emotional distress damages, counsel has submitted relevant portions of plaintiff's medical records, as well as an expert report prepared by Dr. Francesca Peckman, Psy.D., DABPS, CPQ, Clinical and Forensic Psychologist, who treated plaintiff on two occasions. (ECF No. 139, Exhs. A-C). Dr. Peckman's report describes additional symptoms suffered by plaintiff, including "tension headaches and migraines" resulting from "stress with her job as a waitress," "trouble falling and staying asleep," and "flashbacks." (*Id.*).

11

Plaintiff's testimony, supplemented as it is by expert and medical documentation, is sufficient to support her claim for emotional distress damages.  Based on the evidence presented, the Court recommends that plaintiff should be awarded $75,000 in emotional distress damages, which is within the "acceptable broad range" (albeit at the higher end) of awards for emotional harm of this type.  *Compare Andujar*, 2018 WL 1087494, at *13 (finding testimony of plaintiff and his wife describing how plaintiff became depressed, withdrawn, quiet, anxious, and easily agitated after being fired "sufficient to support the $75,000 award for emotional distress" under the NJLAD and holding that award did "not fall outside the acceptable broad range"), *Klawitter*, 395 N.J. Super. at 335-36 (affirming award of $79,538 in emotional distress damages under NJLAD for plaintiff who testified to feeling "crushed and devastated" after being wrongfully overlooked for promotion), *and Rendine v. Pantzer,* 141 N.J. 292, 313 (1995) (affirming $125,000 award for emotional distress in NJLAD case where plaintiffs detailed inconvenience, emotional stress, anxiety, uncertainty, career and family disruption, and other adjustment problems), *with Boles v. Wal-Mart Stores, Inc.*, Civ. No. 12-1762 (MCA), 2015 WL 4653233 (D.N.J. Aug. 6, 2015) (finding jury's $10,000 emotional distress award supported by the testimony of plaintiff and his ex-spouse regarding his emotional state following retaliatory termination), *aff'd*, 650 F. App'x 125 (3d Cir. 2016), *Hampton*, 2017 WL 714351, at *5 (granting $10,000 in emotional distress damages to plaintiff who suffered anxiety, depression, and fear about the future as a result of employer's discrimination), *Strenkoski*, 2014 WL 2573266, at *2 (awarding $3,000 in emotional distress damages to plaintiff who "suffered blistering, stress, and sleeplessness"), *and Kluczyk v. Tropicana Prods., Inc.*, 368 N.J. Super. 479, 484 (App. Div. 2004) (affirming $20,000 emotional distress damage award for plaintiff who suffered anxiety and chest pain due to hostile work environment).

4.   Punitive Damages

The Third Circuit has acknowledged that punitive damages are available under the NJLAD in certain circumstances.  *Levinson v. Prentice-Hall, Inc.*, 868 F.2d 558, 563 (3d Cir. 1989).  To hold an employer liable for punitive damages under the state law, the Court must find that (1) "upper management has actually participated in or been willfully indifferent to the discrimination" and (2) that "the misconduct is 'especially egregious.'"  *Cavuoti v. N.J. Transit Corp.*, 161 N.J. 107, 113 (1999) (citing *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587 (1993)).  Defining which employees constitute members of "upper management" for the purposes of punitive damages is a fact-sensitive task.  *Id.* at 122.  The determination does not turn on the individual's title or label. *Id.* at 123.  Instead, courts should consider whether the individual has "(1) broad supervisory powers over the involved employees, including the power to hire, fire, promote, and discipline, or (2) the delegated responsibility to execute the employer's policies to ensure a safe, productive and discrimination-free workplace."  *Id.* at 129.

Here, plaintiff contends that Joshua DiMura, then General Manager of Legal Sea Foods' Paramus location, and Louis Vetsas, an Assistant Manager who was later promoted to General Manager of the same location, engaged in much of the discriminatory conduct on which plaintiff bases her claim for punitive damages.  (*See* ECF No. 83 at 2-3).  Applying the guidance of the New Jersey Supreme Court in *Cavuoti*, the Court finds that DiMura and Vetsas would not properly be classified as members of Legal Sea Foods' "upper management."  161 N.J. at 126.  The record suggests that neither DiMura nor Vetsas maintained such authority or discretion as "heads of departments, regional managers, or compliance officers" and that neither had the power to make

significant personnel decisions, such as hiring, firing, disciplining, or promoting employees.[7] *See id.* at 128-29.  Accordingly, the Court finds that the conduct of DiMura and Vetsas does not suffice to support punitive damages against Legal Sea Foods.

To the extent that plaintiff claims that a punitive damages award is warranted on the basis that "corporate upper management" at Legal Sea Foods acted with "malice or reckless indifference" to the wrongful conduct of DiMura and Vetsas, the Court having reviewed the record on this motion is not satisfied that plaintiff has demonstrated that any member of upper management engaged in the requisite "deliberate act or omission" that would justify an assessment of punitive damages.  (ECF No. 137 at 13).  Plaintiff's principal allegation with respect to conduct by those properly considered upper management is that human resources personnel "received but failed to investigate" plaintiff's post-termination complaint about Vetsas.  (ECF No. 137).  The Court, having inspected plaintiff's June 8, 2017 email complaint (ECF No. 69, Exh. 40) finds that she did not report any allegation of discrimination therein, such that management's failure to investigate rises to the level of reckless or deliberate indifference.  The Court thus finds that plaintiff has not proffered an adequate factual basis on which to justify exemplary damages, especially as a "greater threshold than mere negligence" must be applied in the punitive damages context. *Rendine*, 141 N.J. at 313 (quoting *Lehmann*, 132 N.J. 624-45); *cf. Leiva v. City of Trenton,* Civ. A. No. 13-5136 (MAS) (DEA), 2021 WL 2722718, at *5 (D.N.J. June 30, 2021), at *5 (awarding punitive damages on default given egregious conduct and physical attack by defendant).

---

[7]   For example, the record demonstrates that, upon learning of plaintiff's alleged violation of the employee meal policy, Mr. Vetsas reported the incident to Legal Sea Foods' regional manager and Employee Relations Manager in Boston, seeking direction about how he "was to proceed." Subsequently, the Employee Relations Manager directed that plaintiff be terminated.  (ECF No. 73-1, ¶¶ 35-38).

Because the record does not sufficiently demonstrate that upper management willfully or wantonly disregarded plaintiff's rights, the undersigned respectfully recommends that punitive damages be denied.

    5.  Attorneys' Fees

The Court next addresses plaintiff's request for reasonable attorneys' fees and costs, which are expressly available to prevailing parties under the NJLAD. *See* N.J.S.A. 10:5–27.1. Entry of a default judgment against Legal Sea Foods on plaintiff's NJLAD claims renders plaintiff a prevailing party for purposes of this inquiry. *See Leiva,* 2021 WL 2722718, at *6; *accord 2109971 Ontario Inc. v. Matrix Hospitality Furniture, Inc.,* Civ. A. No. 21-11412 (KM), 2022 WL 154411, at * 6 (D.N.J. Jan. 14, 2022); *J&J Sports Production, Inc. v. Suarez Enters., LLC*, Civ. A. No. 18-CV-8823 (PGS), 2020 WL 832917, at *1 (D.N.J. Feb. 20, 2020) ("Since the Court has entered a default judgment against Defendants, Plaintiff is a prevailing party mandated to receive costs and attorneys fees [under fee shifting statute].")

    a.  The Lodestar

In determining what constitutes a "reasonable" counsel fee under fee-shifting statutes like the NJLAD, the Third Circuit has adopted the "lodestar" approach, under which the court multiplies the number of hours counsel reasonably worked on the case by a reasonable hourly billing rate. *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 773 (3d Cir. 2019). There is "a strong presumption that the lodestar is a reasonable fee." *Dee v. Borough of Dunmore*, 548 F. App'x 58, 60 (3d Cir. 2013). The party seeking attorneys' fees bears the burden of proving the reasonableness of the request. *See Wade v. Colaner*, Civ. A. No. 06-3715 (FLW), 2010 WL 5479625, at *4 (D.N.J. Dec. 28, 2010).

The Court first considers the number of hours for which fees are sought. Plaintiff's attorneys at Berkowitz, Lichtstein, Kuritsky, Giasullo & Gross, LLC filed Declarations and detailed billing records demonstrating that their firm devoted a total of approximately 732 hours to this case since it was filed in 2017 and presenting why this expenditure of time should be viewed as reasonable. (ECF Nos. 139, 142). The billable hours comprising this total were 235.1 hours for firm partner John Messina, 434 hours for senior associate Evan Silagi, and 59.68 hours for three "law clerks" (subsequently defined by the firm as second- and third-year law students, *see* ECF No. 177). (ECF No. 142-1 (detailed invoices)).

The Court is mindful in determining the reasonableness of the time spent by counsel that the defaulted defendant did not oppose this motion and that the Court thus may not "reduce counsel fees *sua sponte* as excessive, redundant, or otherwise unnecessary in the absence of a sufficiently specific objection." *Montone v. City of Jersey City,* Civ. A. No. 06-280 (SRC)(CLW), 2021 WL 2821201, at *2 (D.N.J. July 7, 2021) (quoting *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)); *see also Leiva,* 2021 WL 2722718, at *7, n. 7 (noting that where defendant is in default, "the Court's only focus will be on whether the requested lodestar rate is reasonable, not whether a reduction of the requested rate is warranted"). Nevertheless, the Court is satisfied by its careful review of the detailed billing records submitted in support of plaintiff's motion that she has met her burden of showing the reasonableness of the time expended by plaintiff's firm during the pleadings stage, protracted discovery, settlement conferences and motion practice.[8] The Court

---

[8]     The Court further notes that although plaintiff's gender discrimination claims were dismissed on summary judgment, those claims were sufficiently intertwined with the race discrimination claims that survived summary judgment that there is no basis to reduce the lodestar for plaintiff's lack of success on the gender claim. *See Johnson v. Orr*, 897 F.2d 128, 132 (3d Cir. 1990) (where "the unsuccessful claims are sufficiently interrelated with the successful ones -- i.e.

therefore finds that the reasonable number of hours for purposes of the lodestar calculation is 732 hours.

The Court next turns to whether the hourly rate sought for the legal professionals at plaintiff's firm is reasonable.  The reasonableness inquiry requires the Court to consider "the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).  Mr. Messina, an attorney with more than 30 years of experience, seeks an hourly rate of $525; Mr. Silagi, an attorney with more than 10 years of experience, seeks $300 per hour; and the proposed hourly rate for the law clerks is $150.  (ECF Nos. 142, ¶ 5; 139, ¶ 17; 142, ¶ 17).  To substantiate the reasonableness of these rates, counsel submitted a 2018 fee schedule published by Community Legal Services of Philadelphia (CLS) for use in fee-shifting cases, as well as supporting declarations from independent counsel in the field.  (ECF Nos. 140; 143; 142, Exh. B).  In addition, the rate sought for the paraprofessional law clerks comports with that previously approved by the Third Circuit.  *See United States ex rel. Bahnsen v. Boston Scientific Neuromodulation Corp.*, Civ. A. No. 11-1210 (JMV), 2021 WL 118927, at *1 (approving billing rate of $150 per hour for paralegals).  Based on these submissions, and given the Court's familiarity with prevailing market rates for legal services in this community, the Court finds the rates sought by plaintiff's counsel reasonable.

---

they 'involve a common core of facts or [are] based on related legal theories,' -- courts should not attempt to identify specific hours spent on those claims and to exclude them from the lodestar") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)); *Blakey v. Continental Airlines*, 2 F. Supp. 2d 598, 605, 606 (D.N.J. 1998) (same).

Given the approval of the number of hours spent on this case and the rate at which those hours should be calculated, the lodestar is $262,579.50.  In light of the age of this litigation, the supporting evidence presented, and the absence of objection from Legal Sea Foods, the Court finds that this is the appropriate lodestar.[9]

b. Enhancement

Plaintiff's counsel seeks a forty percent enhancement of the lodestar amount to reflect the risk of nonpayment based upon the purely contingent nature of their retainer agreement with plaintiff.  (ECF No. 137 at 29).   Where a plaintiff has prevailed on NJLAD claims in federal court, the Third Circuit requires the district court to consider possible application of a contingency multiplier to enhance the calculated lodestar amount.  *Lanni v. N.J.*, 259 F.3d 146, 152 (3d Cir. 2001).  In suits brought pursuant to NJLAD, a counsel fee awarded "cannot be 'reasonable' unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed." *Rendine*, 141 N.J. at 298.  The New Jersey Supreme Court has advised that "contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-

---

[9]     The Court is cognizant of having recommended a lodestar amount that is multiples of what it recommends that plaintiff herself be awarded in compensatory damages.  It is clear from relevant precedent, however, that there is no requirement that plaintiff's recovery be proportional to the fees awarded to her counsel. *See Blakey*, 2 F. Supp. 2d at 605 (noting that "there is no requirement that the fee award be proportional to the damages recovered in the litigation"); *accord Balducci v. Cige*, 240 N.J. 574, 599 (2020); *Szczepanski v. Newcomb Medical Ctr.*, 141 N.J. 346, 366 (1995), *aff'd*, 141 N.J. 346 (1995).

five percent of the lodestar." *Id.*; *see also Hurley v. Atlantic City Police Dept.,* 933 F. Supp. 396, 430 (D.N.J. 1996) (same), *cert. denied*, 528 U.S. 1074 (200).

In determining whether the lodestar amount should be enhanced by the contingency multiplier, *Rendine* instructs the Court to consider:  whether the case was taken on a contingent basis, whether the attorney was able to mitigate the risk of nonpayment in any way, and whether other economic risks were aggravated by the contingency of payment.  *Blakey*, 2 F. Supp. 2d at 607 (citing *Rendine,* 141 N.J. 339).  Here, plaintiff's counsel took the case on a pure contingency basis.  (ECF No. 142 ¶ 6).  Further, it does not appear that counsel were able to mitigate the risk of nonpayment in any way, such as by settling the action; plaintiff and defendant Legal Sea Foods never came close to resolving the action at settlement conferences conducted by the undersigned. *See Hurley*, 933 F. Supp. at 430.  Moreover, the risk to plaintiff's counsel of an insubstantial recovery was significant in that, as stated above, plaintiff suffered minimal pay loss, leaving her recovery of damages dependent on establishing causally linked emotional distress and punitive damages that have no prescribed value.  Given these risks and in light of applicable law, the undersigned recommends that an enhancement be awarded.

"To calculate the appropriate enhancement,  'the court should consider the result achieved, the risks involved, and the relative likelihood of success in the undertaking.'" *Baughman v. U.S. Liab. Ins. Co.*, 723 F. Supp. 2d 741, 752 (D.N.J. 2010) (quoting *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 860 A.2d 435, 448 (2004)).  Here, the Court finds appropriate to enhance the lodestar by an amount sufficient to satisfy the goal of encouraging contingent representation in employment discrimination cases while at the same time acknowledging that "the result achieved" — a default judgment against the alleged discriminating party — was purely a victory stemming from

defendant Legal Sea Foods ceasing to defend the case before trial.  The Court recommends that the appropriate enhancement given these factors is a twenty-five percent enhancement of the lodestar.  *Compare Hurley*, 933 F. Supp. at 430 (awarding one-third enhancement of lodestar in contingent fee case in which plaintiff prevailed at trial on LAD and federal claims) *with Leiva*, 2021 WL 2722718, at *9 (declining to award an enhancement in action where plaintiff prevailed by default).  This amount is within the range suggested by *Rendine* and is satisfactory to compensate plaintiff's counsel's risk of nonpayment.  With an enhancement of the lodestar by twenty-five percent, the total fee award would be $328,224.38.

6.  Costs of Litigation

Plaintiff seeks an award of litigation-related expenses in the amount of $13,868, which includes costs arising from depositions, expert witnesses, travel, legal research platforms, transcription services, and other out-of-pocket expenditures.  (ECF No. 137).  The Court has reviewed plaintiff's itemized list of costs and expenses and finds that they are substantiated and reasonable in the context of this longstanding litigation.  It is respectfully recommended that plaintiff be awarded $13,868 in expenses.

7.  Prejudgment Interest

Finally, plaintiff requests an award of prejudgment interest.  (ECF No. 137 at 27).  Prejudgment interest is mandated in NJLAD cases by New Jersey Court Rule 4:42-11(b).  *See Boles,* 2015 WL 4653233, at *11; *Blakey,* 2 F. Supp. 2d at 609.  Therefore, the Court recommends that plaintiff be granted prejudgment interest on her award of economic and emotional distress damages calculated in accordance with New Jersey Court Rule 4:42-11(b).

## III. CONCLUSION

For the reasons stated above, this Court respectfully recommends that default judgment be entered against defendant Legal Sea Foods pursuant to Federal Rule of Civil Procedure 55(b)(2). It is further recommended that plaintiff be awarded $2,627.33 in back pay damages, $75,000 in emotional distress damages, and prejudgment interest calculated in accordance with New Jersey Court Rule 4:42-11(b), as well as $328,224.38 in attorneys' fees and $13,868 in litigation-related expenses. The recommended total amount of the judgment is thus $419,719.71 exclusive of prejudgment interest. The parties are advised that they may file objections within 14 days of entry of this Report and Recommendation, pursuant to Fed. R. Civ. P. 72(b)(2).

Dated:  March 29, 2022

*Leda Dunn Wettre*
_____
**Hon. Leda Dunn Wettre**
**United States Magistrate Judge**

Original:    Clerk of the Court
    cc:    Hon. Susan D. Wigenton, U.S.D.J.
        All Parties